ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ANKUR MANDHANIA (State Bar No. 302373)
ankur.mandhania@mto.com
MUNGER, TOLLES & OLSON LLP
650 Mission Street,
Twenty-Seventh Floor
San Francisco, California 94105
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for Snapchat, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MARTINEZ and MALCOLM NEAL, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>SNAPCHAT, INC.<br><br>                Defendant. | Case No. 2:16-cv-05182-SVW-FFM<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     September 19, 2016<br>Time:     1:30 PM<br>Place:    Courtroom 6, 2nd Floor<br>Judge:   Hon. Stephen V. Wilson |

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

PLEASE TAKE NOTICE THAT at 1:30 PM on September 19, 2016, or as soon thereafter as counsel may be heard, before the Honorable Stephen V. Wilson in Courtroom 6 of the above-entitled Court located at Los Angeles, California, Defendant Snapchat, Inc. will and hereby does move for an order compelling Plaintiffs Jose Luis Martinez and Malcolm Neal ("Plaintiffs") to arbitrate their individual claims in this action.  Snapchat brings this motion based on the agreement between Plaintiffs and Snapchat requiring both parties to arbitrate all disputes and claims in connection with Plaintiffs' use of Snapchat's products and services. Additionally, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, Snapchat will and hereby does move for an order staying all proceedings in this action pending the conclusion of the arbitration.

The motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and Federal Rule of Civil Procedure 12(b)(1).  The motion is based upon this notice and motion, the memorandum of points and authorities filed concurrently herewith, the declarations of Gus Holcomb and Rosemarie T. Ring, filed concurrently herewith, the pleadings on file, and such evidence and argument as may be presented at the hearing on this motion.

The motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 26 and August 15, 2016.  The parties were unable to reach a resolution to eliminate the necessity for this motion.

Respectfully submitted,

Dated:  August 22, 2016

MUNGER, TOLLES & OLSON LLP

By:  /s/ Rosemarie T. Ring
Rosemarie T. Ring

Attorney for Defendant
SNAPCHAT, INC

# **TABLE OF CONTENTS**

I.      Introduction ............................................................................................... 1

II.     Background................................................................................................. 2

        A.    Plaintiffs' Allegations ..................................................................... 2

        B.    Snapchat's November 2014 Terms of Use ...................................... 3

III.    Argument .................................................................................................. 6

              1.    Plaintiffs Agreed to the November 2014 Terms and
                    Arbitration Agreement............................................................. 7

              2.    The Arbitration Agreement Is Valid and Enforceable ............... 10

              3.    Plaintiffs' Particular Claims Are Subject to Arbitration ............ 15

                    (a)    The Arbitrator Should Decide Whether Plaintiffs'
                           Claims Are Arbitrable ....................................................... 16

                    (b)    If this Court Decides the Issue, It Should Conclude
                           that Plaintiffs' Claims are Arbitrable ................................ 17

IV.     Conclusion ............................................................................................... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*5381 Partners LLC v. Shareasale.com, Inc.*,
   No. 12-cv-4263 (JFB)(AKT), 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ........................................................................................ 9

*Abreu v. Slide, Inc.*,
   No. C 12-00412 WHA, 2012 WL 2873772 (N.D. Cal. July 12, 2012) ........................................................................................ 12

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ................................................................ 6, 12

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ................................................ 16, 17

*Burgoon v. Narconon of N. California*,
   125 F. Supp. 3d 974 (N.D. Cal. 2015) ......................................... 13

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002) ..................................................... 14

*Contec Corp. v. Remote Sol. Co.*,
   398 F.3d 205 (2d Cir. 2005) ........................................................ 17

*Crawford v. Beachbody, LLC*,
   No. 14CV1573, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ............... 9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ...................................................................... 6

*In re Facebook Biometric Information Privacy Litigation*,
   --- F. Supp. 3d ---, 2016 WL 2593853 (N.D. Cal. May 5, 2016) ........ 8, 9, 10

*Fallo v. High–Tech Inst.*,
   559 F.3d 874 (8th Cir.2 009) ...................................................... 17

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........................................... 9

*Grabowski v. Robinson*,
   817 F. Supp. 2d 1159 (S.D. Cal. 2011) .......................................... 13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Graf v. Match.com*,
   No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015) ................. 12

*Guadagno v. E\*Trade Bank*,
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ........................................... 10

*Khraibut v. Chahal*,
   No. C15-04463 CRB, 2016 WL 1070662 (N.D. Cal. Mar. 18, 2016) ............... 17

*KPMG LLP v. Cocchi*,
   132 S. Ct. 23 (2011) .................................................................. 6

*Krivitsky v. Am. Bankers Ins. Co. of Florida*,
   No. CV 14-1142 GAF(JEMx), 2014 WL 2452957, at \*6 (C.D. Cal.
   Mar. 20, 2014) ......................................................................... 12

*Lifescan, Inc. v. Premier Diabetic Servs.*,
   363 F.3d 1010 (9th Cir. 2004) ..................................................... 6

*Martin v. TeleTech Holdings, Inc.*,
   213 Fed. App'x 581 (9th Cir. 2006) ............................................. 13

*Meyer v. T-Mobile USA Inc.*,
   836 F. Supp. 2d 994 (N.D. Cal. 2011) ...................................... 14, 15

*Milliner v. Bock Evans Financial Counsel, Ltd.*,
   114 F.Supp.3d 871, 880 (N.D. Cal. 2015) ..................................... 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ................................................................. 6

*Moretti v. Hertz Corp.*,
   No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ............. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*,
   460 U.S. 1 (1983) .................................................................... 17

*Moule v. United Parcel Serv. Co.*,
   No. 16-cv-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ............... 8

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) .................................................... 13

-iii-

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Naria v. Trover Sols., Inc.*,
   967 F. Supp. 2d 1332 (N.D. Cal. 2013).................................................. 10, 14, 17

*Nemec v. Linebarger*,
   No. 5:14–cv–01343–PSG, 2014 WL 6847342 (N.D. Cal. Dec. 4,
   2014) ........................................................................................................... 12

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ........................................................................ 8, 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ...................................................................... 16, 17

*Petrofac, Inc. v. DynMcDermott Petrol. Op. Co.*,
   687 F.3d 671 (5th Cir. 2012) ............................................................................ 17

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) ............................................................................ 11

*Qualcomm Inc. v. Nokia Corp.*,
   466 F.3d 1366 (Fed.Cir. 2006) ......................................................................... 17

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ............................................................................... 8

*Rent-A-Ctr., W., Inc. v. Jackson*,
   130 S. Ct. 2772 (2010) ........................................................................................ 6

*Smith v. Vmware, Inc.*,
   No. 15-cv-03750-THE, 2016 WL 54120 (N.D. Cal. Jan. 5, 2016)..................... 11

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011).................................................................. 8

*Terminix Int'l Co. v. Palmer Ranch LP*,
   432 F.3d 1327 (11th Cir. 2005) ......................................................................... 17

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) .......................................................................... 14

*Tompkins v. 23andMe, Inc.*,
   No. 13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25,
   2014) (Koh, J.)................................................................................................... 11

-iv-

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Zaltz v. JDATE,*
952 F. Supp. 2d 439 (E.D.N.Y. 2013)..................................................9

**STATE CASES**

*Armendariz v. Found. Health Psychcare Servs., Inc.*
24 Cal.4th 83 (2000)..........................................................10, 11, 13

*Iskanian v. CLS Transp. Los Angeles, LLC,*
59 Cal.4th 348 (2014)...............................................................12

*Sanchez v. Valencia Holding Co.,*
61 Cal.4th 899 (2015)...............................................................12

*Serafin v. Balco Props. Ltd., LLC,*
235 Cal.App.4th 165 (2015)..........................................................13

*Toal v. Tardif,*
178 Cal.App.4th 1208 (2009)........................................................10

**FEDERAL STATUTES**

9 U.S.C. § 2.........................................................................6

9 U.S.C. § 4.........................................................................6

**STATUTES - OTHER**

Illinois Biometric Information Privacy Act (BIPA)
740 ILCS 14/1 *et seq.* ..........................................................1, 2

**OTHER AUTHORITIES**

AAA, Consumer Arbitration Rules: Costs of Arbitration, *available at*
https://www.adr.org/aaa/ShowPDF?doc=ADRSTAGE2026862 .........................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Snapchat provides a camera application that lets users share photos and videos with other Snapchat users.  In September 2015, Snapchat launched the "Lenses" feature, which allows users to edit the photos and videos they share to include real-time special effects and sounds.  For example, users can add rainbows coming out of their mouths, flower crowns atop their heads, and tears streaming from their eyes.  As Snapchat explains to its users, Lenses does not use facial recognition technology to place these special effects.  Instead, it uses object recognition technology, which allows Lenses to identify a nose as a nose or an eye as an eye, but does not—and cannot—identify a nose or an eye, let alone a whole face, as belonging to any specific person.

Ignoring these public disclosures, Plaintiffs Jose Luis Martinez and Malcolm Neal allege that Snapchat uses facial recognition technology and therefore must be obtaining "biometric identifiers and/or biometric information" in violation of the Illinois Biometric Information Privacy Act ("BIPA").  Accordingly, they bring this action on behalf of themselves and a putative class of Illinois Snapchat users, asserting that the Lenses feature violates various BIPA provisions.

Plaintiffs' claims are wholly without merit.  But this Court need not reach those issues because Plaintiffs expressly agreed to arbitrate disputes like this.  Snapchat's Terms of Use, which Plaintiffs accepted before using Lenses, contain a prominent arbitration agreement requiring Plaintiffs to individually arbitrate all claims and disputes in connection with their use of any Snapchat service.  The Terms of Use constitute a binding contract between Snapchat and Plaintiffs, and the arbitration agreement is valid and enforceable.  Moreover, Plaintiffs' claims are clearly within the scope of the agreement.  Snapchat thus brings this motion to compel Plaintiffs to arbitrate their individual claims in connection with their use of Lenses—precisely as they agreed to do when they accepted the Terms of Use.

## II.   BACKGROUND

### A.   Plaintiffs' Allegations

Snapchat provides "image messaging and multimedia services to its users via its mobile application ('app') that allows users to share images or video clips with other users." (Compl. ¶ 25). "To use Snapchat, users download and install a copy of the Snapchat app on their mobile devices." (*Id*.)  In September 2015, Snapchat released Lenses, "a feature of Snapchat's services." (*Id*. ¶ 26).  According to Plaintiffs, Lenses uses facial recognition technology which "scans a user's face each time he or she uses Lenses to send a snap or story and collects, stores, and uses, geometric data relating to the unique points and contours (i.e., biometric identifiers) of each face." (*Id*. ¶ 33).[1]

Plaintiffs allege that they are active users of Snapchat and the Lenses feature. Martinez alleges that he "has been a Snapchat user since at least November 2014," has been "using Snapchat's Lenses feature since it became available in September 2015," and "uses the Lenses feature one to two times per day." (*Id*. ¶ 10).  Neal alleges that he "has been a Snapchat user since on or about April 23, 2013 and sends snaps using the Lenses feature approximately once a week." (*Id*. ¶ 11).  Both allege that they "never consented, agreed, or gave permission – written or otherwise – to Snapchat for the collection or storage of the biometrics identifiers or biometric information associated with [their] face template." (*Id*. ¶ 10-11).  On this basis, Plaintiffs assert that Lenses violates BIPA, 740 ILCS 14/1 *et seq.*, and assert a single claim under that statute on behalf of themselves and a putative class of Snapchat users who are citizens of Illinois.  (*Id*. ¶ 42).

---

[1] Although not directly relevant to this motion, it is worth noting that Plaintiffs do not allege a single fact in support of the allegation that Lenses uses facial recognition technology.  In fact, as noted, Snapchat explains to its users that Lenses does not use facial recognition technology.

## B.   Snapchat's November 2014 Terms of Use

When the Lenses feature was introduced on September 15, 2015, Snapchat's operative Terms of Use had become effective on November 17, 2014 ("November 2014 Terms").  Declaration of Gus Holcomb ("Holcomb Decl."), Ex. 1.  The November 2014 Terms included an arbitration agreement with the following "**ARBITRATION NOTICE**" near the beginning:

> **ARBITRATION NOTICE: EXCEPT FOR CERTAIN TYPES OF DISPUTES DESCRIBED IN THE ARBITRATION CLAUSE BELOW, YOU AGREE THAT DISPUTES BETWEEN YOU AND SNAPCHAT WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION AND YOU WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASSWIDE ARBITRATION.**

*Id*. at p. 1(emphasis and capitalization in original).  The "Disputes" section included a bolded heading entitled "**3) Arbitration Agreement; Class Waiver; Waiver of Trial by Jury**."  Under this heading, Subsection 1 stated:

> **Applicability of Arbitration Agreement.**  All claims and disputes in connection with the Terms or the use of any product or service provided by Snapchat that cannot be resolved informally or in small claims court shall be resolved by binding arbitration on an individual basis under the terms set forth below (the "Arbitration Agreement"), except that you and Snapchat are not required to arbitrate any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents.

*Id*. at p. 9.

Subsection 2 stated that "[a]rbitration shall be initiated through the American Arbitration Association ('AAA')," that the "AAA Consumer Arbitration Rules" will govern the arbitration, and provided a hyperlink to the rules.  *Id*.  The fee schedule in those rules states that the consumer's arbitration expenses include only a nonrefundable $200 filing fee and makes clear that any hearing fees and arbitrator compensation are Snapchat's responsibility.  Declaration of Rosemarie T. Ring

("Ring Decl."), Ex. 2 at p. 33.[2]   And Subsection 6 described the class action waiver in more detail:

> **Waiver of Class or Consolidated Actions.** ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS, AND CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.  Notwithstanding any other provision in these Terms, in the event that this subparagraph is deemed invalid or unenforceable, neither you nor we are entitled to arbitration and instead all claims and disputes shall be resolved in a court located in Los Angeles County, California.

*Id*. at pp. 10-11.

Existing Snapchat users as of November 17, 2014 were given notice of and had to expressly accept the November 2014 Terms before they could upgrade their Snapchat app to the latest version and use new Snapchat features.  Because all versions of the Snapchat app predating the November 2014 Terms were "deprecated" (meaning they no longer worked) by July 29, 2015, all active Snapchat users had to have agreed to the November 2014 Terms by that date.  Holcomb Decl. ¶ 13.  Upon attempting to upgrade the Snapchat app, these users were presented with the screen below informing them that Snapchat's "Terms of Use and Privacy Policy have changed" and providing links to both policies.  And they were told that "By tapping Accept, you agree to the revised Snapchat Privacy Policy and Terms of Use."  *Id.* ¶ 11 & Ex. 2.

---

[2] The cost schedule was amended effective January 1, 2016, but the new schedule continues to limit the consumer's costs to $200.  *See* AAA, Consumer Arbitration Rules: Costs of Arbitration, *available at* https://www.adr.org/aaa/ShowPDF?doc=ADRSTAGE2026862.

-4-

1
2
3
4
5
6
7
8
9
10
11
12
13



14   Holcomb Decl., Ex. 2.

15   **C.    Snapchat's October 2015 and March 2016 Terms of Service**

16   Snapchat updated its Terms of Use on October 28, 2015 ("October 2015

17   Terms"), and March 29, 2016 ("March 2016 Terms") and renamed them the Terms

18   of Service.  Holcomb Decl. ¶¶ 5, 17, 22 & Exs. 3, 5.  Both sets of terms contain

19   arbitration agreements substantially similar to the arbitration agreement in the

20   November 2014 Terms.  *See id*., Ex. 3 at p. 7 (§ 17.a) & Ex. 5 at p. 7 (§ 17.a).  The

21   March 2016 Terms also added the following opt-out provision:

22       **Opt-out.** You may opt out of this arbitration agreement. If you do so,
         neither you nor Snapchat can force the other to arbitrate. To opt out,
23       you must notify Snapchat in writing no later than 30 days after first
         becoming subject to this arbitration agreement. Your notice must
24       include your name and address, your Snapchat username and the email
         address you used to set up your Snapchat account (if you have one),
25       and an unequivocal statement that you want to opt-out of this
         arbitration agreement. You must send your opt-out notice to this
26       address: Snapchat, Inc., ATTN: Arbitration Opt-out, 63 Market Street,
27       Venice, CA 90291.

28   *Id*., Ex. 5 at p. 8 (§ 17.i).

III.    **ARGUMENT**

This Court should grant Snapchat's motion to compel arbitration.  Plaintiffs agreed to a valid, unambiguous, prominently presented agreement to arbitrate, and the FAA requires that such agreements be enforced by their terms.

A.      **Federal Courts Enforce Valid Arbitration Agreements**

As the Supreme Court has repeatedly emphasized, the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'"  *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  Section 4 of the FAA requires courts to compel arbitration "'in accordance with the terms of the agreement.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting 9 U.S.C. § 4).  Courts are required to "rigorously enforce agreements to arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

Under the FAA, arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.  Thus, when deciding a motion to compel arbitration under the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue."  *Lifescan, Inc. v. Premier Diabetic Servs.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

B.      **The Court Should Compel Arbitration**

The Court should compel arbitration here because both *Lifescan* conditions are satisfied: A valid arbitration agreement exists, and it encompasses this dispute.

1

**1.    Plaintiffs Agreed to the November 2014 Terms and Arbitration Agreement**

2

3        Despite repeated requests from Snapchat's counsel, Plaintiffs have refused to

4   disclose their Snapchat usernames or other information necessary to identify their

5   Snapchat accounts.  *See* Ring Decl., ¶¶ 3, 6, 8-12.[3]  No matter.  Even without that

6   information, Snapchat can demonstrate that both Plaintiffs necessarily agreed to the

7   November 2014 Terms at the very least.  Because those Terms expressly require

8   them to individually arbitrate all claims and disputes in connection with Snapchat

9   services, this Court should hold them to that agreement and compel arbitration.

10        A combination of Plaintiffs' own allegations and Snapchat's records confirm

11   that both Plaintiffs agreed to the November 2014 Terms.  Martinez and Neal allege

12   that they have been Snapchat users since "at least November 2014" and "on or about

13   April 23, 2013," respectively, and that they are active users with Martinez using

14   Lenses "one to two times per day" and Neal using it "approximately once a week."

15   Compl. ¶¶ 10-11.  Like all existing Snapchat users when the November 2014 Terms

16   became effective, they had to agree to the November 2014 Terms the next time they

17   upgraded their Snapchat apps after that date.  Holcomb Decl. ¶¶ 12-15.  And

18   because all versions of the Snapchat app predating the November 2014 Terms were

19   "deprecated" (meaning they no longer worked) by July 29, 2015, all active users of

20   the app had to have agreed to the November 2014 Terms by that date.  *Id*. ¶¶ 13-15.

21        Having cleared that brush, the next question is whether the November 2014

22   Terms they agreed to formed a binding contract to arbitrate.  They did.  As shown

23   

24   

25   

26   

27   

28   

---

[3] Plaintiffs' refusal to provide this information is no doubt an attempt to frustrate Snapchat's ability to bring this motion to compel arbitration.  But it also makes it impossible for Snapchat to take standard steps to preserve metadata about their accounts and other information potentially relevant to their claims.  And it is yet another example of the gamesmanship in which Plaintiffs have engaged since filing this action, first by filing it in this Court only to dismiss and refile in state court, and then by attempting to force Snapchat to "waive" Article III defenses by threatening to file a meritless remand motion.  *See* Snapchat's concurrently-filed Opposition to Plaintiffs' Motion to Remand to State Court.

*supra* at pp. 4-5, when they upgraded the Snapchat app, Martinez and Neal were presented with a screen informing them that Snapchat's "Terms of Use and Privacy Policy have changed" and providing links to both policies. They were also told that "By tapping Accept, you agree to the revised Snapchat Privacy Policy and Terms of Use." Holcomb Decl. ¶ 11 & Ex. 2. Martinez and Neal necessarily tapped "Accept"; otherwise they could not have kept using the Snapchat app. They therefore manifested affirmative assent to the November 2014 Terms.

And that means they entered into a binding contract with Snapchat to arbitrate. "'While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.'" *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 403 (2d Cir. 2004)). One principle that remains unchanged is that "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Id*. And courts in this Circuit and elsewhere regularly hold that that binding "mutual manifestation of assent" exists when users are asked to agree to terms, presented with a hyperlink to those terms so that they may review them, and asked to click a separate button to confirm that they manifestly assent to the terms. *See In re Facebook Biometric Information Privacy Litigation*, --- F. Supp. 3d ---, 2016 WL 2593853, at *8 (N.D. Cal. May 5, 2016) (agreement enforceable where user had to "take some action—a click of a dual-purpose box—from which assent might be inferred. A contract was not foisted upon him simply by passively viewing a website. *Nguyen* advises that this difference is enough to form a contract."); *Moule v. United Parcel Serv. Co*., No. 16-cv-00102-JLT, 2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016) (where "Plaintiff had the opportunity to view the Terms and Conditions and clicked the 'Yes' button to process the shipment, the Court finds Plaintiff manifested assent to the UPS Terms when arranging the shipment at issue"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) (upholding agreement

"[b]ecause Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept'"); *Crawford v. Beachbody, LLC*, No. 14CV1573, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (an "agreement constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I Accept' button and clicks that button"); *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (same); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834, 839-40 (S.D.N.Y. 2012) (where page provides "'By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service.'" and phrase "'Terms of Service' is underlined, an indication that the phrase is a hyperlink, plaintiff "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough."); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 453–54 (E.D.N.Y. 2013) (same); *5381 Partners LLC v. Shareasale.com, Inc*., No. 12-cv-4263 (JFB)(AKT), 2013 WL 5328324, at *7 (E.D.N.Y. Sept. 23, 2013) (same).

That is precisely how Snapchat's Terms of Use worked.  Martinez and Neal were "provided with an opportunity to review the terms . . . in the form of a hyperlink."  *Crawford*, 2014 WL 6606563, at *3; *Fteja*, 841 F. Supp. 2d at 840. They were required to take an affirmative step—tapping "Accept"—to acknowledge that they were agreeing to a contract.  They were "informed of the consequences of [an] assenting click."  *Fteja*, 841 F. Supp. 2d at 840.  And they tapped "Accept." That is "enough to form a contract."  *In re Facebook Biometric Information Privacy Litigation*, 2016 WL 2593853, at *8.  Indeed, it encompasses all of the elements that the decisions cited above have found to create binding contracts.  And it is a far cry from the "browsewrap" agreements—ones that try to bind a user who has just "passively view[ed] a website"—that courts have found wanting.  *Id*.  As the *In re Facebook* court explained, the Ninth Circuit has said such browsewraps are not

-9-

1    enough—and it has held that flows like Snapchat's suffice to create binding

2    contracts.  *Id*. (*citing Nguyen*, 763 F.3d at 1176-77).

3         Moreover, by agreeing to the November 2014 Terms, Plaintiffs necessarily

4    agreed to the arbitration agreement set forth in those Terms.  Snapchat prominently

5    displayed in bold, all-caps font at the outset of the November 2014 Terms an

6    "**ARBITRATION NOTICE**" informing users that "**YOU AGREE THAT**

7    **DISPUTES BETWEEN YOU AND SNAPCHAT WILL BE RESOLVED BY**

8    **MANDATORY BINDING ARBITRATION AND YOU WAIVE ANY RIGHT**

9    **TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASS-WIDE**

10   **ARBITRATION.**" Holcomb Decl., Ex. 1 at p. 1.  Thus, the existence of the

11   arbitration agreement was "clear and reasonably conspicuous" to Plaintiffs.

12   *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008).

13   Plaintiffs are bound by the arbitration agreement.

14              **2.    The Arbitration Agreement Is Valid and Enforceable**

15        The arbitration agreement in the November 2014 Terms is valid and

16   enforceable.  California and federal law reflect a "strong" policy in favor of

17   "enforcing arbitration agreements." *Armendariz v. Found. Health Psychcare Servs.,*

18   *Inc.* 24 Cal.4th 83, 96-97 (2000).  As a general rule, courts "will indulge every

19   reasonable intendment to give effect to arbitration proceedings." *Toal v. Tardif*, 178

20   Cal.App.4th 1208, 1218 (2009).[4]  An arbitration agreement is unenforceable only "if

21   the agreement is both procedurally and substantively unconscionable." *Naria v.*

22   *Trover Sols., Inc.*, 967 F. Supp. 2d 1332, 1336 (N.D. Cal. 2013) (citing *Armendariz*

23   *v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114 (2000)).  Snapchat's

24   arbitration agreement is neither.

25

26

27   _____

[4] The Terms of Use specify that California law governs the Terms and any disputes
28   arising out of or relating to these Terms.  Holcomb Decl., Ex. 1 at p. 11.

***Substantive Unconscionability.***  For substantive unconscionability, "mutuality is the 'paramount' consideration," as "[a]greements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (citations omitted).  The arbitration provision is wholly bilateral, as both Snapchat and users are required to arbitrate their claims (except those that fall within a narrow exception for certain intellectual property claims, which even then preserves mutuality by applying the exception to both Snapchat and its users[5]).  Holcomb Decl., Ex. 1 at p. 9.  Furthermore, Snapchat's arbitration provision adopts the rules of a neutral party, the American Arbitration Association ("AAA"), which provides for a neutral arbitrator, a written decision with limited judicial review, and some discovery. *Id.*; Ring Decl., Ex. 2 at pp. 7, 20 (R-22), 27 (R-43).  Under settled law, the AAA's arbitration procedures are not substantively unconscionable. *See, e.g., Armendariz*, 24 Cal.4th at 91 (listing minimum requirements for arbitration of employee's statutory rights as "neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration"); *see also Smith v. Vmware, Inc.*, No. 15-cv-03750-THE, 2016 WL 54120, at *5 (N.D. Cal. Jan. 5, 2016) (rejecting argument that AAA Rules are substantively unconscionable, noting that they allow "'full and fair exploration of the issues in dispute'" and do "not curtail discovery to the extent that the AAA Rule

_____

[5] Specifically, the parties "are not required to arbitrate any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents."  Holcomb Decl., Ex. 1 at p. 9.  This provision itself is bilateral because Snapchat's users "retain all ownership rights" in their "User Content," which includes "photos, videos, text, graphics, items, or other materials," grant Snapchat a license to that content, *id*. at pp. 2-3, and therefore may avail themselves of the IP arbitration carveout. *See, e.g., Tompkins v. 23andMe, Inc*., No. 13-cv-05682-LHK, 2014 WL 2903752, at *17 (N.D. Cal. June 25, 2014) (Koh, J.) (rejecting plaintiffs' argument that similar IP clause lacked mutuality as terms elsewhere "allow[] consumers to retain certain intellectual property rights to their genetic and self-reported information.  Therefore, consumers may avail themselves of the carve out for intellectual property disputes.").

-11-

pertaining to discovery is substantively unconscionable"); *Nemec v. Linebarger*, No. 5:14–cv–01343–PSG, 2014 WL 6847342, at *6 (N.D. Cal. Dec. 4, 2014) (plaintiffs "have not shown that the AAA rules are one-sided or overly harsh").

The class waiver likewise is not unconscionable. The Supreme Court rejected that argument in *Concepcion*, 563 U.S. at 344. Following *Concepcion*, the California Supreme Court has repeatedly upheld class waiver provisions. *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 364 (2014) (abrogating cases which found class waivers unconscionable because "*Concepcion* holds that *even if* a class waiver is exculpatory in a particular case, it is nonetheless preempted by the FAA") (emphasis in original); *Sanchez v. Valencia Holding Co.*, 61 Cal.4th 899, 907 (2015) (enforcing arbitration clause's class action waiver and explaining that "the FAA requires enforcement of class waivers" in arbitration agreements).

Plaintiffs' costs are limited, as well: The AAA's rules direct that the Plaintiffs need only pay the filing fee of $200 to initiate arbitration, and that Snapchat must pay the remaining arbitration fees. Ring Decl., Ex. 2 at p. 33. This further demonstrate that the provision is not substantively unconscionable. *See, e.g., Krivitsky v. Am. Bankers Ins. Co. of Florida*, No. CV 14-1142 GAF(JEMx), 2014 WL 2452957, at *6 (C.D. Cal. Mar. 20, 2014) (rejecting "Plaintiff's contention that [agreement] is substantively unconscionable" where "contract would require *Defendants* to pay all arbitration fees if Plaintiff were unable to obtain a fee waiver"); *Abreu v. Slide, Inc.,* No. C 12-00412 WHA, 2012 WL 2873772, at *5 (N.D. Cal. July 12, 2012) ("The arbitration provision cannot be declared invalid based on the requirement that both parties pay the AAA arbitration fees because those fees are not unconscionable. Plaintiff cites no authority to the contrary.").

Finally, the arbitration agreement is pro-user in many other ways that courts have found relevant to unconscionability. For example, the agreement gives users the freedom to pursue claims under $10,000 in small-claims court. Holcomb Decl., Ex. 1 at pp. 9-10; *see Graf v. Match.com*, No. CV 15-3911 PA (MRWX), 2015 WL

-12-

4263957, at *5 (C.D. Cal. July 10, 2015) (enforcing arbitration provision which "allows a user to avoid arbitration in favor of pursuing a claim in small claims court in the location of their choosing").  It also allows users to engage in non-appearance arbitration.  Holcomb Decl., Ex. 1 at p. 10; *compare Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006) (invalidating forum selection clause where plaintiff would be required to "fly across the country to arbitrate a contract signed and performed in California"); *Milliner v. Bock Evans Financial Counsel, Ltd.*, 114 F.Supp.3d 871, 880 (N.D. Cal. 2015) (invalidating forum selection clause which forced plaintiffs to mediate out-of-state as "unduly oppressive").  It thus takes pains to give users control, and to avoid ills that courts reviewing other arbitration agreements have found to suggest unconscionability.

In combination, all of these characteristics—the bilateral nature of the clause, the incorporation of a neutral and well-known arbitration association's rules, the limitations on Plaintiffs' costs, the option to pursue certain claims in small-claims court, the ability to engage in non-appearance arbitration to avoid travel—show that the arbitration agreement is not substantively unconscionable.[6]  And because it is

---

[6] Even if the Court found that the agreement had some substantively unconscionable provisions, which it does not, that would not defeat arbitration.  Courts refuse to enforce arbitration agreements only when an agreement is so thoroughly unconscionable that "the central purpose of the contract" is "tainted with illegality." *Burgoon v. Narconon of N. California*, 125 F. Supp. 3d 974, 989 (N.D. Cal. 2015) (quoting *Armendariz*, 24 Cal.4th at 124) (internal quotations omitted).  When a court finds only one or a few provisions unconscionable, the proper approach is not to decline to enforce the arbitration agreement but instead to sever those provisions. *See Serafin v. Balco Props. Ltd., LLC*, 235 Cal.App.4th 165, 183–84 (2015) (stating that "a court should sever an unconscionable provision unless the agreement is so 'permeated' by unconscionability that it cannot be cured by severance"); *Martin v. TeleTech Holdings, Inc.*, 213 Fed. App'x 581, 583-84 (9th Cir. 2006) (reversing denial of motion to compel arbitration because unconscionable provision was "easily severable from the remainder of the arbitration agreement"); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (granting motion to compel arbitration because "the three substantively unconscionable provisions [of the arbitration clause] may be severed from the agreement").  Severability is feasible here, *see* Holcomb Decl., Ex. 1, at p. 12 (severability provision), and thus if the Court finds an unconscionable provision that is the appropriate remedy.

1    not substantively unconscionable, the Court need go no further.  The arbitration
2    agreement must be enforced.  *See Naria*, 967 F. Supp. 2d 1336 (arbitration
3    agreement is unenforceable only if it is both substantively and procedurally
4    unconscionable).

5         **Procedural Unconscionability.**  If the Court nonetheless proceeds to consider
6    procedural unconscionability, it should conclude that Plaintiffs' agreement to
7    arbitrate was not procedurally unconscionable either.

8         A "contract is procedurally unconscionable if it is a contract of adhesion, *i.e.,*
9    a standardized contract, drafted by the party of superior bargaining strength, that
10   relegates to the subscribing party only the opportunity to adhere to the contract or
11   reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003).  However, where
12   users are provided with a reasonable opportunity to opt out of an arbitration
13   agreement, the agreement is not a contract of adhesion.  *See, e.g., Circuit City
14   Stores, Inc. v. Ahmed,* 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural
15   unconscionability where plaintiff was given thirty days to decide whether to
16   participate in arbitration program and mail a form to opt out); *Meyer v. T-Mobile
17   USA Inc.,* 836 F. Supp. 2d 994, 1002 (N.D. Cal. 2011) ("There is no contract of
18   adhesion, however, if the contract provides a meaningful opportunity to opt-out of
19   arbitration.").  And while the November 2014 Terms did not contain an opt-out
20   mechanism, the March 2016 Terms do.

21        As set forth *supra* at p. 5, Snapchat's March 2016 Terms came into force on
22   March 29 of this year.  Existing users had to agree to them by tapping "Accept"
23   before they could upgrade the Snapchat app.  Holcomb Decl. ¶ 22 & Ex. 6.  And it
24   is virtually certain that Martinez and Neal agreed to the March 2016 Terms before
25   they filed suit:  The vast majority of Snapchat users upgrade the Snapchat app
26   almost immediately after each update is released, and as of May 23, 2016, the date
27
28

-14-

1    the Complaint was filed, 96.66% of active users already had accepted the March

2    2016 Terms.  *Id.* ¶ 26.[7]

3         Snapchat's March 2016 Terms contain an arbitration agreement that is

4    substantially similar to the one in the November 2014 Terms.  Holcomb Decl., Ex. 5

5    at p. 7.  However, it also includes a new provision:  It gives users the opportunity to

6    opt out of the arbitration provision if they "notify Snapchat in writing no later than 30

7    days after first becoming subject to this arbitration agreement."  *Id.* at p. 8 (§ 17.i).

8    The effect of the opt-out, as the agreement explains, is that "neither you nor Snapchat

9    can force the other to arbitrate"—meaning that an opt-out notification would prevent

10   mandatory arbitration between Snapchat and the user of all claims, including those

11   that predate the opt-out's presence.  *Id.*  Users who opt out of the arbitration

12   agreement may continue to use their Snapchat accounts, meaning that the contract

13   does not give users only the opportunity to adhere to the contract or reject it.  And

14   Snapchat has no record of receiving an opt-out from either Martinez or Neal.

15   Holcomb Decl. ¶ 27.

16        Given this "meaningful opportunity to opt-out of arbitration," this Court

17   should conclude that "[t]here is no contract of adhesion," *Meyer,* 836 F. Supp. 2d at

18   1002, and that the arbitration provision is not procedurally unconscionable.  For this

19   reason, too, Plaintiffs' agreement to arbitrate is valid and should be enforced.

20              **3.    Plaintiffs' Particular Claims Are Subject to Arbitration**

21        Plaintiffs may attempt to oppose arbitration by arguing that their claims are

22   not subject to the arbitration agreement.  This argument is both irrelevant and

23   incorrect.  It is irrelevant because the parties have agreed to let the arbitrator

24   _____

25   [7]  Plaintiffs may object that this percentage does not show with certainty that they
     accepted the March 2016 Terms.  But that is a problem of Plaintiffs' own making:
26   Snapchat could provide hard data showing whether Plaintiffs accepted these Terms
     if they would simply tell Snapchat their usernames, as Snapchat has repeatedly
27   requested.  If Plaintiffs object to reliance on the March 2016 Terms on this ground,
     Snapchat will ask that the Court order Plaintiffs to provide their usernames or other
28   information sufficient to identify their Snapchat accounts.

1    determine whether a particular claim is subject to the arbitration clause; accordingly,

2    this Court should not consider the merits of such an argument.  But if the Court

3    considers such an argument, it should reject it, since Plaintiffs' claims clearly fall

4    within the scope of the arbitration agreement.

#### *(a)*      The Arbitrator Should Decide Whether Plaintiffs' Claims Are Arbitrable

6          The Ninth Circuit has held that whether a particular claim is subject to

7    arbitration is "an issue for judicial determination unless the parties clearly and

8    unmistakably provide otherwise."  *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d

9    1069, 1072 (9th Cir. 2013) (internal quotation marks and citations omitted)

10   (emphasis omitted).  Here, the parties have clearly and unmistakably provided that

11   the arbitrator is to decide whether a given claim is subject to arbitration.  The

12   November 2014 Terms (and the subsequent Terms) include an arbitration provision

13   which incorporates the AAA's Consumer Arbitration Rules to "govern all aspects of

14   this arbitration."  Holcomb Decl., Ex. 1 at p. 9.  Those AAA rules, in turn, state that

15   the "arbitrator shall have the power to rule on his or her own jurisdiction, including

16   any objections with respect to the existence, scope, or validity of the arbitration

17   agreement or to the arbitrability of any claim or counterclaim."  Ring Decl., Ex. 2 at

18   p. 27 (R-14).[8]

19          Based on this AAA rule, the Ninth Circuit has joined the vast majority of

20   circuits to consider the question and has held that "incorporation of the AAA rules

21   constitutes clear and unmistakable evidence that contracting parties agreed to

22   arbitrate arbitrability."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.

23   2015)[9]; *see also Oracle Am., Inc.*, 724 F.3d at 1074 ("Virtually every circuit to have

24

_____

25

26   [8] The AAA's Consumer Arbitration Rules remain unchanged since September 1, 2014, so Plaintiffs have been on notice of this rule since at least November 17, 2014, when they acquiesced to AAA arbitration.

27   [9] Though the *Brennan* court limited its holding "to the facts of the present case, which do involve an arbitration agreement between sophisticated parties," the court

28

considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Petrofac, Inc. v. DynMcDermott Petrol. Op. Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir.2 009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed.Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Accordingly, this Court should not reach the question whether Plaintiffs' claims are arbitrable, leaving that to the arbitrator to decide in the first instance.

### *(b)* If this Court Decides the Issue, It Should Conclude that Plaintiffs' Claims are Arbitrable

In any event, Plaintiff's claims fall squarely within the scope of the arbitration agreement.  "In California, a court determines whether an arbitration agreement encompasses a dispute by reading the contract as a whole.  The court evaluates the intent and scope of an arbitration agreement by looking to the usual and ordinary meaning of the contract's language, as well as the circumstances under which the contract was made."  *Naria*, 967 F. Supp. 2d at 1337.  Moreover, the question whether a claim is subject to arbitration is generally to be resolved "in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983).

Here, it is clear from the plain text and ordinary meaning of the arbitration provision that its covers Plaintiffs' claims.  The arbitration provision encompasses

---

also stated that its reasoning would apply to "unsophisticated parties or to consumer contracts.  Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts."  *Brennan*, 796 F.3d at 1130-311 (collecting cases).  District courts following *Brennan* have "defer[red] to the AAA's Rules on arbitrability" to find that a reference to AAA rules, even between unsophisticated parties, is sufficient to establish an agreement to arbitrate arbitrability.  *Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *5-6 (N.D. Cal. Mar. 18, 2016) (collecting cases).

1  "[a]ll claims and disputes in connection with the Terms or the use of any product or

2  service provided by Snapchat that cannot be resolved informally or in small claims

3  court."  Holcomb Decl., Ex. 1 at p. 9.  Plaintiffs assert claims based on their "use [of

4  the Lenses] feature of Snapchat's services."  (Compl. ¶¶ 6, 30).  Thus, Plaintiffs'

5  claims clearly are "in connection with" their use of Snapchat's services, and

6  therefore must be arbitrated.

7  **IV.**   **CONCLUSION**

8      For these reasons, the Court should compel Plaintiffs' claims to arbitration.

9

10  DATED:  August 22, 2016          MUNGER, TOLLES & OLSON LLP
                                          ROSEMARIE T. RING
11                                        JONATHAN H. BLAVIN
                                          ANKUR MANDHANIA
12

13

14

15                          By:  /s/ Rosemarie T. Ring
                                 ROSEMARIE T. RING
16                          Attorneys for Snapchat, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 2:16-cv-05182-SVW-FFM